IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES C. HARRIS, | ) |
| | ) |
|          Plaintiff, | ) |
| | ) |
| vs. | )   Case No.   12-cv-1002-MJR-SCW |
| | ) |
| JIMMY DEAN, | ) |
| | ) |
|          Defendant. | ) |

**REPORT AND RECOMMENDATION**

**WILLIAMS, Magistrate Judge:**

### I. Introduction

This case is before the Court on Defendant Jimmy Dean's Motion for Summary Judgment for Failure to Exhaust (Doc. 23). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a). It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **GRANT** Motion for Summary Judgment for Failure to Exhaust (Doc. 23).

### II. Findings of Fact

**A.    Procedural Background**

Plaintiff filed his Complaint on September 13, 2013, alleging that Defendant Dean was deliberately indifferent to a serious medical need (Doc. 1). Specifically, Plaintiff alleges that while he was prescribed Naproxen for headaches, Plaintiff suffered from an ulcer and ruptured artery, which caused him to vomit blood (Doc. 10). On December 14, 2011 Plaintiff requested assistance because he was vomiting blood while in his cell (Doc. 1 at p. 6). Defendant Dean responded to his request,

evaluated his condition, and took his name and prison identification number (*Id.*).  However, Defendant Dean allegedly did not return for 1 hour and 45 minutes, at which time Plaintiff was removed to the Health Care Unit (*Id.*).  During the time that Plaintiff waited for Defendant Dean to return, Plaintiff alleges that he continued to get weaker and nauseated, and in fact vomited more blood as he was being transferred to the health unit.   He was rushed to Chester Memorial Hospital where he was diagnosed with an ulcer and ruptured artery, which had bled into his stomach (*Id.*).  Plaintiff's Complaint alleges that Defendant Dean was deliberately indifferent to his medical needs by delaying his transfer to the health care unit.

In response to Plaintiff's Complaint, Defendant Dean filed a motion for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies (Doc. 23).  Specifically, Defendant argues that Plaintiff did not fully exhaust his grievances as he submitted grievances to the ARB without attaching the counselor's response, grievance officer's report, and the Chief Administrative Officer's response.  Defendant acknowledged that the ARB received two grievances from Plaintiff dealing with Defendant's delay in treatment for Plaintiff (Doc. 23 Ex. A).  One grievance was dated December 26, 2011 and received by the ARB January 26, 2012 (*Id.* at pp. 4-6).  That grievance was ultimately returned to Plaintiff because the grievance did not contain the counselor's response, the grievance officer's report, or the Chief Administrative Officer's response (*Id.*).  The ARB returned the grievance with a letter informing him of his requirement to submit a grievance with the proper responses from the institutional level (*Id.* at p. 4).  The ARB then received another grievance from Plaintiff on March 16, 2012 (*Id.* at pp. 7-11).  This grievance was dated December 26, 2011/January 19, 2012, but also did not include the counselor's, grievance officer's, or Chief Administrative Officer's response and thus was returned to Plaintiff.  The ARB also informed Plaintiff that his grievance was untimely (*Id.* at p. 9).  Defendant argues that since Plaintiff failed to

comply with the department rules or ARB instructions and failed to submit the proper responses at the institutional level, Plaintiff has failed to exhaust his administrative remedies.

Plaintiff filed a Response (Doc. 27) in which he argued that he tried to pursue his grievance at the institutional level, but that neither his counselor, grievance officer, nor the Chief Administrative Officer ever responded. Plaintiff argues that he wrote a grievance on December 26, 2011 regarding his medical treatment, but that he never received a response from anyone at the institution. He claims that he wrote to the warden to ask about his grievance but never heard back from the warden. He also stated that he gave his counselor, M.L. Price, his grievance and that she told him she had 90 days to answer but he never received a response. He then sent the grievance to Gina Allen with the ARB, but she returned the grievance for not providing the proper responses. He alleged that he tried to return the grievance telling Ms. Allen that he could not get anyone at the institution to respond, but she returned it as untimely.

In support of his arguments, Plaintiff provides the Court with a grievance dated January 19, 2012, with the date December 26, 2011 written above it, but the grievance is not signed by the Plaintiff (Doc. 27 at pp. 7-8). The grievance indicates it was received by the ARB on March 16, 2012 (*Id.*). He also includes a February 8, 2012 letter to Warden Michael Atchison in which he informs the warden that he is trying to exhaust his remedies through the grievance process and asks the warden to see that his grievances get to the proper people (*Id.* at p.9). He also attaches a grievance from May 3, 2012 in which he states that he gave his counselor a grievance regarding medical treatment on January 27, 2012 but that he never received it back (*Id.* at p. 11). This grievance does not have any responses on it and Plaintiff has presumably written "No Respond from Warden Gave Him 30 Days" (*Id.*). He also has a February 8, 2012 letter to a B. Spiller indicating that he gave his counselor Ms. Price a grievance on January 27, 2012 which she never returned (*Id.* at p. 15). There is

also a March 13, 2012 letter from the John Howard Association to Warden Atchison which purports to enclose an emergency grievance from Plaintiff dated December 26, 2011, that he alleged to them was never responded to (*Id.* at p. 17).  The John Howard Association also wrote Plaintiff on May 29, 2012 regarding a grievance from December 20, 2011 (*Id.* at p. 18).  In that letter, the John Howard Association recommends that Plaintiff contact his counselor regarding the status of his grievance.

Defendant Dean filed a Reply (Doc. 31) in which he argued that Plaintiff's grievance (Doc. 27 at p. 7) lacked credibility because it was not signed by Plaintiff, had two separate dates on it (12/26/2011 and 1/19/2012) and was not received by the ARB until March 16, 2012, without any response from anyone at the institutional level.  Defendant also argued that the grievance office at Menard had no record of Plaintiff filing a grievance against Dean regarding the December 14, 2011 incident.   Plaintiff filed a sur-reply (Doc. 35) in which he sought to add additional exhibits including the same March 13, 2012 letter from the John Howard Association he previously provided, a letter to Plaintiff from Nursing Supervisor Angela Crain regarding his December 26, 2011 grievance, and a grievance sent on December 8, 2011.   Defendant sought to strike the sur-reply under the Local Rules (Doc. 36).   Plaintiff has filed a Response (Doc. 38) to that motion, simply asking to admit the exhibits attached to his sur-reply and to offer testimony regarding the exhaustion issue.

As the Court found that there were issues of fact as to whether Plaintiff tried to exhaust his administrative remedies but was thwarted when his counselor failed to respond, the Court set the matter for an evidentiary hearing pursuant to *Pavey v. Conley*, **544 F.3d 739 (7th Cir. 2008).**

**B.** *Pavey* **Hearing**

The Court held an evidentiary hearing on the issue of whether Plaintiff exhausted his administrative remedies on August 5, 2013.  The parties were informed that the issue was limited to determining what happened to Plaintiff's December 26, 2011 grievance after he submitted it to his

counselor.

Defendant first called Lori Oakley to testify. Ms. Oakley is the current grievance officer at Menard Correctional Center, having served in the position since March 2012. Oakley testified that when the grievance office receives grievances they are sorted into two piles, one pile for grievances marked as an emergency and a regular grievance pile. The grievances are then date stamped and logged, with the emergency grievances logged in a separate log. Oakley testified that when a grievance deals with a medical issue, once the counselor receives the grievance it is given to the health care unit so that they may properly respond. The health care unit's response is then attached to the grievance and returned to the inmate, which he can then submit to the grievance office.

Oakley reviewed the grievance logs from 2011 and 2012. She was able to locate one grievance which was received on December 27, 2011 and dated December 8, 2011, but that grievance dealt with possible punishment for issue with trays in the chow hall (Doc. 32 at pp. 6-8). Another grievance was received on February 14, 2012 but that grievance dealt with Plaintiff's reimbursement of tennis shoe charges (Doc. 32 at pp. 11-12). She also did not locate any grievances from Plaintiff on the emergency grievance log (See Def's Ex. B). On cross-examination, Plaintiff informed Oakley that he had been told by his counselor, M.L. Price that each individual in the grievance process had ninety (90) days to respond to the grievance. Oakley indicated that was not correct as there is no set time frame for response from the counselor or the grievance officer. The warden has two months to respond to a grievance or within a reasonable time frame. As to what an inmate should do if he does not hear back from his counselor on a grievance, Oakley testified that he should try to speak with his counselor in a face-to-face meeting. Oakley pointed out that Plaintiff's counseling summary indicated that he had many meetings with his counselors.

Defendant next called David Hennrich to testify. Mr. Hennrich was a counselor at

Menard Correctional Center and was Plaintiff's counselor from approximately November 9, 2011 until January 26, 2012. Hennrich testified that he received a grievance from Plaintiff on December 26, 2011 and the grievance was forwarded to the health care unit. He also met with Plaintiff on January 6, 2012 to discuss a medical grievance and that grievance was forwarded to the health care unit for a response. The health care unit would typically address grievances dealing with medical issues as they have more knowledge of the issues and as the counselor, Hennrich could not answer a medical grievance on his own.

Hennrich testified that when the health care unit dealt with a grievance, the response was normally returned to him, although he did acknowledge that on some occasions the health care unit returned the grievances directly to the inmate. When the grievance was returned from the health care unit it would have a memo with it which Hennrich would attach to the grievance and either return the grievance to the inmate or forward it to the grievance officer, depending on the inmate's preference. Hennrich testified that the health care unit has sent their response directly to inmate's in the past, although he acknowledged that avenue was not the most efficient way to handle the grievances and was not normal procedure as the grievance was supposed to have a counselor response. In those cases, he would not know about the response unless the inmate told him.

Hennrich also testified that he has a collateral contact entry on the counseling summary for Plaintiff on January 26, 2012. He described a collateral contact as one in which a grievance is sent to counselor through the prison mail. Hennrich noted that the counseling summary indicated a second copy of the health care unit grievance was sent to the health care unit for a response. He testified that he would not have given the grievance back to the health care unit if the grievance already had the health care memo attached.

Plaintiff also testified at the evidentiary hearing. Plaintiff testified that he recalled

giving his grievance to Hennrich for a response, but the only thing he received back was the memo from the Health Care Unit and not the grievance. By the time he received the memo, he had been transferred to the south-lowers, which is Menard's maximum security facility. He received the memo on January 27, 2012, a day after he sent a second copy of the grievance to his counselor. Plaintiff acknowledged that in the south lowers, M.L. Price was his counselor and he never showed her the memo he received from the health care unit. Price told him that she had ninety days to respond to his grievance and although he kept asking her about the grievance, she never responded to his questions. On January 26, 2012, the ARB also received a copy of this grievance and he acknowledged that he sent it a few days before it was received. He testified that he submitted the grievance to Price only once, but sent handwritten letters inquiring about the grievance.

Plaintiff made clear that although he had the memo from the health care unit concerning his grievance in his possession during the numerous times that he met with Price, he never showed her the memo. He testified that he wanted to keep the memo for litigation purposes, as proof that he had sent the December 26, 2011 grievance and that it had been received. He stated that he didn't understand why the health care unit answered his grievance when he had sent the grievance to the counselor. He acknowledged, however, that he never discussed the memo with Price or the fact that the health care unit responded to his grievance.

### III.   Conclusions of Law

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." ***Wragg v. Village of Thornton***, **604 F.3d 464, 467 (7th Cir. 2010).**

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "*no action*

shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler,* **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson,* **362 F.3d 395, 398 (7th Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry,* **286 F.3d 1022, 1025 (7th Cir. 2005)**. Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole,* **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley,* **544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative

> remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742.** Although the court in *Pavey* included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal question." *Doss v. Gilkey*, **649 F.Supp.2d 905, 912 (S.D.Ill. 2009) (Gilbert, Phil J.).**

A. **Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Harris was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code §504.800 et seq.** The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code §504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id*. The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she

can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

**B.**     **Motion to Strike**

Before addressing the merits of the motion, the undersigned first addresses

Defendant's motion to strike (Doc. 36). Defendant seeks to strike Plaintiff's Answer to Reply (Doc. 35) in which Plaintiff adds additional exhibits. The sur-reply also includes the memo from the health care unit which the Court finds to be relevant to the issues raised regarding Plaintiff's exhaustion of his administrative remedies. Thus, the Court **DENIES** Defendant's motion to strike and the Court will consider Plaintiff's sur-reply.

C. Analysis

Here, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies. The parties do not dispute that Plaintiff sent his December 26, 2011 grievance to his counselor, Mr. Hennrich, which Hennrich in turn forwarded to the health care unit for a response. The narrow issue before the Court is whether Plaintiff received a response from his counselor which would have required him to continue with the grievance process by forwarding the grievance to the grievance officer. The undersigned finds that Plaintiff did receive a response in the form of the memo from the health care unit. Although counselor Hennrich acknowledged that the health care unit's response directly to an inmate was not normal procedure, he did testify that this process had occurred in the past. Hennrich testified that when this occurred, an inmate would have to inform his counselor or send the grievance on to the grievance officer. Plaintiff acknowledges that he received the response from the health care unit.

Here, however, Plaintiff did not tell anyone that he received a response from the health care unit on his December 26, 2011 grievance. Plaintiff testified that he received the memo from the health care unit sometime in January 2012 (See Def's Ex. D). The memo indicates that Nursing Supervisor Angela Crain read his grievance from December 26, 2011 and recommended a follow-up appointment. Plaintiff testified that he didn't understand why the health care unit answered his grievance when he originally sent the grievance to his counselor. Although he questioned the health

care unit's response to the grievance, he never bothered to ask either counselors Hennrich or Price about this response. In fact, he met with counselor Price at least four times in the three months after receiving the memo from the health care unit. Plaintiff testified that each time he asked Price about his grievance, yet he never showed her the memo from the health care unit or asked her about it (Def's Ex. C). Nor did he submit his grievance along with the memo to the grievance office, even though he testified that the memo was a response to his grievance.

The Court is frustrated by the fact that IDOC did not follow its own acknowledged procedures by sending the response to the grievance directly to Plaintiff from the health care unit, instead of submitting the grievance to his counselor which was admittedly standard procedure. While this step by the health care unit unnecessarily complicated the issues in this case, after reviewing the evidence before the Court it is clear that Plaintiff received a response to his grievance. Plaintiff acknowledged that the memo was responsive to his grievance as he wondered why the response came from the health care unit instead of his counselor. While Plaintiff questioned the location from which the grievance came, he did nothing further with the grievance. Plaintiff testified that he kept the grievance only as proof that he had submitted a timely grievance, but the undersigned does not credit this testimony. Plaintiff never asked his counselor about the memo or showed the memo to any of his counselors. If he truly was concerned about the response he received, he had ample opportunity to discuss the issue with his counselor. He chose not to. He also could have made a copy of the memo, which he acknowledged he had done with other documents in the past, and forwarded the grievance on to the grievance office, but chose not to do so. It appears to the undersigned that Plaintiff was hiding this grievance, not for his own proof, but rather to play games with his counselor and to circumvent the grievance process. Plaintiff testified that the memo was a response to his grievance, yet he kept insisting to his counselors that he never received a response. This action with

disingenuous on Plaintiff's part. It is clear to the undersigned that Plaintiff received a proper response to his grievance. However, instead of submitting his grievance with the memo to the grievance office for further review, he chose not to submit the grievance and play games with the correctional staff. Thus, the undersigned finds that Plaintiff failed to exhaust his administrative remedies as he failed to submit his grievance to the grievance officer and continue with the grievance process.

### IV. Conclusion

Accordingly, it is **RECOMMENDED** that the Court **FIND** that Plaintiff has failed to exhaust his administrative remedies as to his Eighth Amendment deliberate indifference claim against Defendant Jimmy Dean, **GRANT** Defendant's Motion for Summary Judgment (Doc. 23), and **DISMISSES** Plaintiff's clams against him **without prejudice**.

Should the Court adopt the findings in this Report and Recommendation, there will be no further claims in this case and the case may be **DISMISSED**.

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **August 23, 2013**.

**IT IS SO ORDERED**.
DATED: August 6, 2013.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge